IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) CARE CENTERS MANAGEMENT CONSULTING, INC., ) ) ) and ) ) CHRISTIAN CARE CENTER OF JOHNSON CITY, INC., ) ) ) Defendant. ) | CIVIL ACTION NO. C O M P L A I N T |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the ADA Amendment Act of 2008 (ADAAA), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to John / Jane Doe (the "aggrieved party"), who was adversely affected by such practices.

As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission contends that Defendants Care Centers Management Consulting, Inc. and Christian Care Center of Johnson City, Inc. discharged the aggrieved party because of a disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendants Care Centers Management Consulting, Inc. and Christian Care Center of Johnson City, Inc. (hereinafter referred to collectively as "Defendant Employer") have operated as a single employer and/or integrated enterprise.

(a) Care Centers Management Consulting, Inc. and Christian Care Center of Johnson City, Inc. share common ownership and common management, with J.R. Lewis serving as the president of both entities.

(b) Care Centers Management Consulting, Inc. and Christian Care Center of Johnson City, Inc. have the same principal address and mailing address listed with the Tennessee Secretary of State.

(c) Care Centers Management Consulting, Inc. and Christian Care Center of Johnson City, Inc. have centralized control of labor relations and personnel issues.

(d) Employees of Christian Care Center of Johnson City, Inc. are directed in the employee handbook to contact 1-800-615-CARE with grievances of personnel issues that cannot be handled at the facility level.

(e) Upon information and belief, 1-800-615-CARE is operated by Care Centers Management Consulting, Inc.

5. At all relevant times, Defendant Employer has continuously been doing business in the State of Tennessee and Johnson City, and has continuously had at least 15 employees.

6. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

7. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

## STATEMENT OF CLAIMS

8. More than thirty (30) days prior to the institution of this lawsuit, the aggrieved party filed a charge of discrimination with the Commission alleging violations of Title I of the ADA by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. Since at least October 2009, Defendant Employer has engaged in unlawful employment practices at its Johnson City, Tennessee facility in violation of Sections 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a). These unlawful employment practices include, but are not limited to, Defendant Employer discharging the aggrieved party because of a disability.

(a) The aggrieved party is a qualified individual with a disability under the definition of the ADA, as amended by the ADA Amendments Act of 2008 in that the aggrieved party

3

suffers from human immunodeficiency virus (HIV).

(b)  As a result of the disability, the aggrieved party is substantially limited in the major bodily function of the immune system.

(c)  On or about September 22, 2009, Defendant Employer hired the aggrieved party as a licensed practical nurse (LPN).

(d)  The aggrieved party's regular job duties in the LPN position consisted primarily of preparing and administering medications and insulin shots, charting patient activities, supervising certified nursing assistants (CNAs), and keeping doctors apprised of patient status.

(e)  During the employment with Defendant Employer, the aggrieved party regularly worked the 6:00 p.m. to 6:00 a.m. shift three days a week.

(f)  The aggrieved party occasionally also covered the 6:00 a.m. to 6:00 p.m. shift as needed for Defendant Employer.

(g)  Defendant Employer never reprimanded the aggrieved party, verbally or otherwise, regarding performance while working.

(h)  Because of a concern about missing work from time to time due to the disability, the aggrieved party confided in several co-workers about being HIV positive.

(i)  Chuck Arnold, Defendant Employer's administrator, learned from a co-worker that the aggrieved party was HIV positive on October 22, 2009.

(j)  On October 23, 2009, Defendant Employer called the aggrieved party and informed the aggrieved party to report to work one hour early.

(k)  When the aggrieved party arrived at work, Defendant Employer instructed the aggrieved party to report to the conference room to meet with Administrator Chuck Arnold and Director of Nursing Amanda Dexter.

4

(l) Arnold asked the aggrieved party about the HIV status as the co-worker had told Arnold.

(m) The aggrieved party confirmed being HIV positive.

(n) Arnold then discharged the aggrieved party because Arnold did not believe the aggrieved party could perform the essential function of administering medications because of a disability (HIV positive).

(o) The essential functions of a LPN position consist of the following: prepare and administer medications as ordered by the physician, review medication cards for completeness, accuracy and adherence; complete required documentation in an accurate and timely manner for each problem and/or need identified; maintain resident confidentiality and privacy, treat residents with kindness, dignity and respect; know and comply with and ensure that all nursing service personnel know and comply with residents' rights; access continuing education opportunities appropriate to discipline and responsibilities in order to maintain current clinical status (in states where applicable); consistently demonstrate patience and encouragement in dealing with residents who are limited in their ability to consume medications; identify resident by name-band or photograph prior to administering medications.

(p) The aggrieved party is licensed as a LPN and met the requirements for a LPN position.

(q) The aggrieved party was able to perform the essential functions of the position without a reasonable accommodation.

10. The effect of the practices complained of in paragraphs 9 (a)-(q) above has been to deprive the aggrieved party of equal employment opportunities and to otherwise adversely affect employment because of a disability.

11. Since at least October 2009, Defendant Employer has engaged in unlawful employment practices at its Johnson City, Tennessee facility in violation of Sections 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a). These unlawful employment practices include, but are not limited to, Defendant Employer discharging the aggrieved party because Defendant Employer regarded the aggrieved party as disabled.

(a) On or about September 22, 2009, Defendant Employer hired the aggrieved party as a licensed practical nurse (LPN).

(b) During the aggrieved party's employment, Defendant Employer never reprimanded the aggrieved party, verbally or otherwise, regarding performance.

(c) Chuck Arnold, Defendant Employer's administrator, learned from a co-worker of the aggrieved party that the aggrieved party was HIV positive on October 22, 2009.

(d) On October 23, 2009, Arnold discharged the aggrieved party because Arnold did not believe the aggrieved party could perform the essential function of administering medications while being HIV positive.

(e) The essential functions of a LPN position consist of the following: prepare and administer medications as ordered by the physician, review medication cards for completeness, accuracy and adherence; complete required documentation in an accurate and timely manner for each problem and/or need identified; maintain resident confidentiality and privacy, treat residents with kindness, dignity and respect; know and comply with and ensure that all nursing service personnel know and comply with residents' rights; access continuing education opportunities appropriate to discipline and responsibilities in order to maintain current clinical status (in states where applicable); consistently demonstrate patience and encouragement in dealing with residents who are limited in their ability to consume medications; identify resident by name-band or photograph prior to administering medications.

6

(f) The aggrieved party is licensed as a LPN and met the requirements for a LPN position.

(g) The aggrieved party was able to perform the essential functions of the position without a reasonable accommodation.

12. The effect of the practices complained of in paragraphs 11 (a)-(g) above has been to deprive the aggrieved party of equal employment opportunities and to otherwise adversely affect employment because of a disability.

13. The unlawful employment practices complained of in paragraphs 9 and 11 above were and are intentional.

14. The unlawful employment practices complained of in paragraphs 9 and 11 above were done with malice or with reckless indifference to the federally protected rights of the aggrieved party.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole the aggrieved party by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay for the aggrieved party.

D. Order Defendant Employer to make whole the aggrieved party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 9 and 11 above, including but not limited to expenses for relocation, job search, medical expenses not covered by employee benefit plans, as well as other out-of pocket expenses, in amounts to be determined at trial.

E. Order Defendant Employer to make whole the aggrieved party by providing compensation for non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 9 and 11 above including, but not limited to, emotional distress, pain and suffering, embarrassment, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay the aggrieved party punitive damages for its malicious and reckless conduct described in paragraphs 9 and 11 above in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

**Respectfully submitted,**

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

s/ Faye A. Williams (with permission MHM)
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730

s/ Joseph M. Crout (with permission MHM)
JOSEPH M. CROUT
Supervisory Trial Attorney
TN Bar No. 012957

s/ Matthew H. McCoy
MATTHEW H. McCOY
Trial Attorney
IN Bar No. 29368-49

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1407 Union Avenue, Suite 900
Memphis, TN 38104
(901) 544-0070

9